**\*UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

UNITED STATES OF AMERICA                                    CRIMINAL ACTION

VERSUS                                                                  99-151-SDD-SDJ

DAVID JUDD DISIERE

## <u>RULING</u>

Before the Court is a *Petition for Writ of Error Coram Nobis* by David Judd Disiere ("Petitioner" or "Disiere").[1]   The Government filed an *Opposition*,[2] to which Disiere replied,[3] and the Government sur-replied.[4]  The Court has considered the applicable law, arguments, and submissions of the parties, and is prepared to rule. For the following reasons, Disiere's *Petition*[5] is DENIED.

## I.     FACTUAL & PROCEDURAL BACKGROUND

The *Petition* arises in connection with Disiere's July 2000 conviction for misprision of a felony in violation of 18 U.S.C.  § 4.  Judge Edith Clement's July 11, 2001 *Order*[6] on Disiere's first *Motion for Writ of Error Coram Nobis*[7] carefully summarizes the lengthy and somewhat complicated facts underlying this case.[8]  The Court adopts and incorporates the factual background from that *Order*, reiterating only those portions relevant to its

---

[1] Rec. Doc. No. 594.
[2] Rec. Doc. No. 604.
[3] Rec. Doc. No. 611.
[4] Rec. Doc. No. 615.
[5] Rec. Doc. No. 594
[6] Rec. Doc. No. 537.
[7] Rec. Doc. Nos. 513-514; *see* page 7 n.46 *infra* for definition of *coram nobis*.
[8] Although the *Indictment* underlying Disiere's conviction had been brought in the Middle District of Louisiana and was pending before another section of this Court for a period time, all the sitting judges in the Middle District subsequently recused themselves and the case was assigned to Judge Clement of the Eastern District of Louisiana.  Rec. Doc. Nos. 255-58, 262.

consideration of the instant *Petition*, with additional background as necessary.

On September 24, 1999, Disiere, along with Edwin Edwards ("Edwards"), James Harvey Brown ("Brown"), Alfred Foster Sanders ("Sanders"), Robert Andre Bourgeois ("Bourgeois"), and Ronald Weems ("Weems") (collectively "Defendants"), was indicted by a federal grand jury in the Middle District of Louisiana.  Disiere was charged in Count 1 with conspiracy, Counts 2-37 with mail fraud, Counts 38-40 with wire fraud, count 41 with witness tampering, and Counts 42-43 with insurance fraud.[9]  On June 8, 2000, Disiere was charged with additional counts of conspiracy to commit insurance fraud (Count 57) and insurance fraud (Count 58) by superseding indictment.[10]  The gravamen of the Government's allegations was that Defendants had conspired to fix a settlement favorably resolving a Special Master's investigation of Disiere's handling of two insurance companies that he owned between 1988 and 1999.[11]  Following plea negotiations with the Government, Disiere agreed to plead guilty to a superseding bill of information[12] charging misprision of a felony in violation of 18 U.S.C. § 4.[13]

At a re-arraignment proceeding, held on July 20, 2000, Judge Clement confirmed that Disiere had received and read a copy of the superseding bill,[14] that he had knowledge and understanding of the elements of a misprision charge,[15] and that he agreed that he

---

[9] Rec. Doc. No. 1.

[10] Rec. Doc. No. 185.

[11] *See* Rec. Doc. Nos. 594-1, pp. 4-8; 604, pp. 2-3;  280.  It is undisputed that the settlement prevented the filing of a Racketeering Influence and Corrupt Organizations ("RICO") lawsuit against the companies which the Special Master had been preparing, that, if filed, would have been damaging to Disiere and potentially exposed him and his companies to referrals for criminal investigation.

[12] Rec. Doc. No. 278

[13] More specifically, Count 1 charged that Disiere, "having knowledge of the actual commission by other defendants and coconspirators, … of felonies cognizable by the United States, that is, mail fraud, did conceal same and did not, as soon as possible, make known the commission of said felonies to any judge or other person in civil or military authority under the United States[.]"  *Id*. at p.1.

[14] Rec. Doc. No. 374, pp. 3, 6.

[15] Rec. Doc. No. 374, pp. 8-9.

2

had, in fact, committed all the acts charged in the superseding bill.[16]  The Court also received a factual basis for the plea agreement that was "jointly authored by [Disiere] and the Government, and Disiere acknowledged to the Court that he had reviewed [the factual basis] in great detail with [his attorney]."[17]  Finding that the plea was knowledgeable, voluntary, and had a basis in fact that contained all the elements of the crime, the Court accepted Disiere's guilty plea and plea agreement.[18]  Disiere was sentenced to three years of probation and a $100,000 fine pursuant to the terms of the plea agreement. Disiere did not directly appeal his sentence or conviction, and his term of probation concluded on April 29, 2003.[19]

This is Disiere's second attempt at obtaining *coram nobis* relief.  His first *Writ of Error Coram Nobis*[20] was filed on April 9, 2001, and challenged his conviction on the ground that "the factual basis he helped draft was insufficient to support the misprision charge."[21]  Because he was still serving a term of probation in April 2001, and thus "in custody" for purposes of habeas relief,[22] the Court converted his appeal *coram nobis* into a challenge under 28 U.S.C. § 2255.  The Court further determined that because Disiere had failed to challenge the validity of his plea on direct appeal, any such challenge had been procedurally defaulted and could only proceed upon a showing of either "cause and actual prejudice" or actual innocence.[23]  Finding Disiere unable to satisfy either of these

---

[16] Rea. Tr. p. 9.
[17] Rec. Doc. No. 537 (citing Rea. Tr. pp. 13-14, 23).
[18] Rea. Tr. p. 25.
[19] Rec. Doc. No. 583.
[20] Rec. Doc. No. 513.
[21] Rec. Doc. No. 533, p. 3.
[22] *Id* at p. 4.
[23] *Id* at p. 5.

3

prerequisites,[24] the Court "denied in full" his requests for relief *coram nobis* and under § 2255.[25]

## II.    ARGUMENTS FOR *CORAM NOBIS* RELIEF

Disiere commenced the instant *Writ of Error Coram Nobis* on January 22, 2024.[26] He now challenges his misprision conviction as a fundamental miscarriage of justice, arguing that he was induced to plead guilty "via improper promises and threats" made by Assistant United States Attorneys Salvador Perricone ("Perricone") and Jim Mann ("Mann") (collectively "the Prosecutors") that were "unrelated to the underlying offense" and based in "material misrepresentations of the actions [they] could legally take."[27]  More specifically, Disiere contends that, on or about July 17, 2000, his defense counsel—which consisted of James Linn ("Linn"), William Johnson ("Johnson"), B.J. Rothbaum ("Rothbaum"), and Drew Neville ("Neville")—were contacted by the Prosecutors, who "threatened to revoke [Disiere's] bond based on an allegation of misconduct during a [recent] company picnic" (the "employee allegation").[28]  He further alleges that Mann and Perricone "threatened to make the allegations public" unless Disiere agreed to plead

---

[24] *See Id.* ("Mr. Disiere certainly cannot satisfy the former, since the legal basis for his present challenge was clearly available to him at the time of his plea and direct appeal");  Rec. Doc. 537, p. 33 ("Having failed to establish his actual innocence, he may not raise his procedurally defaulted claim challenging the validity of his guilty plea.").

[25] Rec. Doc. No. 537, p. 33 (cleaned up).

[26] Rec. Doc. No. 594.

[27] Rec. Doc. No. 594-1, p. 20.

[28] Rec. Doc. No. 594-3, p. 2.  The nature of the accusation made against Disiere is not entirely clear. Disiere's briefing refers only to an "allegation," as do the affidavits supplied by two of his former attorneys. *See* Rec. Doc. Nos. 594-3, p. 2; 594-5, p. 1; 594, p. 11.  The Government's opposition, however, describes it as a sexual assault involving a subsequent confidentiality agreement with, and severance payment to, an "aggrieved employee."  Rec. Doc. 604, p. 18.  It is also not clear to which of Disiere's counsel the Prosecutors' alleged "threat" was communicated.  Disiere's briefing states only that it was made during a telephone call with his "counsel."  Rec. Doc. No. 594-1, p. 16.  The affidavits submitted by Johnson and Neville, however, do not clarify which of his "counsel" Disiere is referring to.  The affidavit from Neville suggests that the Prosecutors contacted Linn.  Rec. Doc. 594-5, p. 1.  The affidavit from Johnson, however, states that it was not Linn, but either "Mr. Neville or myself" who "participated in a telephone call with … the Prosecutors … [wherein] the Prosecutors threatened to revoke [Disiere's] bond."  Rec. Doc. No. 594-3, p. 2.

guilty within 24 hours.[29]   Thus, Disiere claims his guilty plea was the product of an unconstitutional ultimatum:[30] "accede to [Perricone and Mann's] demands or face public humiliation and immediate incarceration."[31]   He therefore contends it was "wholly involuntary."[32]

Disiere next contends that, despite his plea being based exclusively on the "[P]rosecutors' promise not to use the employee allegation to revoke his bond and to not publicize [those] … allegations," the same was never disclosed to the Court.[33]   He explains that "[n]either the plea agreement itself nor the court record of the plea proceeding make any reference" to the employee allegation or threats of bond revocation.[34]  Thus, Disiere maintains the Prosecutors "carefully" avoided disclosing their improper threats to the Court, thereby hiding "the essence of those promises that induced the plea agreement."[35]  Because the Court was thereby "unable to assess whether [his] plea was voluntary[,]" Disiere asks that it now be found constitutionally defective and invalid.[36]

---

[29] Disiere describes the Prosecutors' 24-hour deadline as an "exploding plea offer" that was intended to "heighten [Disiere's] emotions and remove his ability to objectively consider the deal that he was being offered."  Rec. Doc 594-1, pp. 34-35.

[30] *See* Rec. Doc. No. 594-1, p. 26 ("a plea is involuntary if it was induced by threats, promise to stop improper harassment, misrepresentations, or promises that have no relationship to the prosecutor's business.").

[31] Rec. Doc. No. 594-1, p. 17.  Disiere further argues that Mann and Perricone misled him to believe that bond revocation was a guaranteed consequence of his not accepting the plea—one which they could unilaterally impose.  *See Id*. at 31 ("to the extent the Prosecutors informed [Disiere] that 'being thrown in jail' was a guaranteed consequence of declining their offer, they lied to him about the direct consequences of his plea.").  He contends that, in doing so, the Prosecutors failed "to observe [the] high standard of good faith" that was required when plea negotiation tactics involve the use of leverage "wholly unrelated to the validity of the underlying charge."  *Id.* at p. 32 (citing *United States v. Nuckols*, 606 F.2d 566, 569 (5th Cir. 1979)).

[32] *Id.* at p. 25.

[33] *Id.* at pp. 28-29 (Disiere explains that "[p]rior to receiving the July 17 phone call, [he] was determined to proceed to trial.").

[34] *Id.* at p. 28.

[35] *Id.* at p. 29 (internal citation and quotation marks omitted).

[36] *Id.*

Aside from the Prosecutors' alleged misconduct in inducing the plea agreement, Disiere newly challenges the actions of his own counsel, James Linn, whom he alleges "conspired with the Prosecutors to cover up their misconduct and lied to the court about the lack of plea coercion."[37]  Specifically, Disiere claims that Linn, prompted by a *Brady* and *Giglio* request from co-defendant Brown's counsel regarding the role of the employee allegation during Disiere's plea negotiations,[38] sent a letter to Judge Clement stating "there would be no documents of any kind to produce."[39]  Further, and unbeknownst to Disiere, he wrote "Mr. Disiere and I represent to the Court that at no time during the plea negotiations was [the allegation] even mentioned, much less negotiated."[40]  Disiere thus claims that Linn's failure to disclose a material fact "that would have exposed the involuntary nature" of his plea constituted constitutionally deficient performance under the Sixth Amendment resulting in prejudice.[41]  He additionally argues that the same is true for all of his attorneys who "did not advise [him] as to the specious nature of the bond revocation threat, [and] did [not] provide him with viable alternatives to pleading guilty."[42]

Lastly, Disiere claims the factual basis supporting his guilty plea is "tenuous" and "repeatedly recites that [Disiere] was without knowledge of his alleged co-conspirators' actions" such that an essential element of misprision under 18 U.S.C. § 4—knowledge of the actual commission of a felony—is not met.[43]  Relying on purported inconsistencies in the factual basis, he contends that its language was crafted by the Prosecutors to mislead

---

[37] *Id.* at p. 39.
[38] While it is unclear how Brown's counsel came to know about the employee allegation, Disiere represents that the *Brady* and *Giglio* request was sent to Linn by Perricone.  *Id.* at p. 18.
[39] *Id.* at p. 19.
[40] *Id.*
[41] *Id.* at p. 39.
[42] *Id.* at p. 40.
[43] *Id.* at p. 36.

the Court into believing a crime had been committed; he suggests the Court did not notice same because, "[i]n the haste of the moment, [Judge Clement] appears to have relied entirely on the proffer of facts provided in open court by … Perricone."[44]  Consequently, Disiere argues the Court was deprived an opportunity to properly test and assess the plea as is required by Rule 11 of the Federal Rules of Criminal Procedure and the Due Process component of the Fifth Amendment.[45]

The Government raises a multitude of arguments in opposition, which the Court will address only as necessary to resolve the instant *Petition*.

### III.     LEGAL STANDARD

The *writ of error coram nobis* is an "extraordinary remedy" intended to achieve justice when "errors of the most fundamental character" have occurred in a criminal proceeding.[46]  It is available to a petitioner no longer in custody who seeks to vacate his conviction in circumstances where "the petitioner can demonstrate [that he is suffering] civil disabilities as a consequence of the [criminal] conviction, and that the challenged error is of sufficient magnitude to justify the extraordinary relief."[47]  Importantly, the *coram nobis* remedy "should issue to correct only errors which result in a complete miscarriage of justice."[48]  Thus, the writ is only appropriate when there is no other available remedy

---

[44] *Id.*
[45] *Id.* at p. 38.
[46] *United States v. Morgan*, 346 U.S. 502, 511-12 (1954) (citing *United States v. Mayer*, 235 U.S. 55, 69 (1914)).  The term "coram nobis" is Latin for "in our presence" or "before us."  *See Nowlin v. United States*, 81 F. Supp. 3d 514, 519-20 (N.D. Miss. 2015).  At common law, a *coram nobis* writ was used by "a court to vacate its own judgments 'for errors of fact … in those cases where the errors [are] of the most fundamental character[.]'"  *Flores v. Washington*, 2018 WL 10509378, at *1 (E.D. Wash. Sept. 18, 2018) (quoting *Mayer*, 235 U.S. at 69).   While Federal Rule of Civil Procedure 60 expressly abolished writs *coram nobis* in civil cases, the *Morgan* Court "held that district courts [retain] the power to issue the writ under the All Writs Act" in criminal proceedings.  *Matus-Leva v. United States*, 287 F.3d 758, 760 (9th Cir. 2002) (citing *Morgan*, 346 U.S. at 506-07).
[47] *United States v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004) (citation omitted).
[48] *United States v. Marcello*, 876 F.2d 1147, 1154 (5th Cir. 1989).

and sound reasons exist for failure to seek appropriate relief earlier.[49]   In any event, "courts must be cautious [to ensure] the extraordinary remedy of *coram nobis* issues only in extreme cases."[50]

### IV.     ANALYSIS

The Court first addresses the Government's argument that Disiere's *Petition* is untimely because it consists of claims he "previously made or could have made in his initial attempt at postconviction relief."[51]   Specifically, the Government argues that, if Disiere was indeed coerced, he was certainly aware of same when he pled guilty in July 2000 and had multiple opportunities to raise his involuntariness argument both before and after sentencing.  Among those opportunities, the Government highlights: (1) "when [Disiere was] directly asked by the Court whether anyone had threatened or forced him to plead guilty;" (2)  "in a direct appeal to the Fifth Circuit;" (3) "in September 2000 when a codefendant questioned the effect of a possible revocation upon his decision to plead guilty; (4) "when he first sought *coram nobis* relief in April 2001;" and (5) "when he petitioned for early termination of probation in April 2003."[52]   Because Disiere failed to contest the voluntariness of his plea at any of these junctures, the Government now urges dismissal on timeliness grounds.[53]

"The law does not require a *coram nobis* petitioner to challenge his conviction at the earliest opportunity, but he must have 'sound reasons' for not doing so."[54]   To this point, the Fifth Circuit instructs that a *coram nobis* petitioner must have exercised

---

[49] *Morgan*, 346 U.S. at 512.
[50] *United States v. Denedo*, 556 U.S. 904, 916 (2009).
[51] Rec. Doc. No. 604, p. 9 (cleaned up).
[52] *Id* at p. 10.
[53] *Id* at pp. 9-14.
[54] *Calzada v. United States*, 2022 WL 209283, at *5 (W.D. Tex. Jan. 18, 2022) (citing *Morgan*, 346 U.S. at 512).

"reasonable diligence" in seeking prompt relief.[55]  The issue of delay therefore "requires inquiry into the circumstances surrounding the petitioner's failure to raise the issues [now presented] earlier and is similar to the inquiry about whether a federal prisoner who moves to vacate his sentence pursuant to § 2255 could have discovered earlier, through the exercise of due diligence, the facts supporting his motion."[56]  Because there is no applicable statute of limitations for a writ *coram nobis*, a district court considering the timeliness of a petition "must decide the issue in light of the circumstances of the individual case."[57]  Importantly, the writ of *coram nobis* is neither "a substitute for [direct] appeal"[58] nor a vehicle "to litigate claims that reasonably could have been raised in a § 2255 motion."[59]

The Government's argument is therefore well-taken—"[p]romptness in seeking *coram nobis* relief once the pertinent facts are available to [a] movant is an important factor in determining whether the extraordinary remedy should be considered" as an initial matter.[60]  Disiere's *Petition* comes twenty-three (23) years after the challenged conviction and is premised, in large part, on prosecutorial misconduct and ineffective assistance of counsel that occurred prior to the guilty plea and subsequent sentencing.  The alleged coercion, threats, and failure of counsel to advise of available alternatives, all occurred on or around July 17, 2000.  It is clear, then, that by July 21, 2000, Disiere was already aware of almost all pertinent facts now underlying his arguments for *coram nobis* relief.  Yet, Disiere neither directly appealed nor sought other postconviction relief on those

---

[55] *Id.* (citing *United States v. Dyer*, 136 F.3d 417, 427 (5th Cir. 1998)).
[56] *Id; See also Gonzalez v. United States*, 981 F.3d 845, 850-51 (5th Cir. 2020).
[57] *Calzada*, 2022 WL 209283, at *5 (citing *Chico v. United States*, 703 F. Appx. 292, 294 (5th Cir. 2017) (per curiam)).
[58] *United States v. Malouff*, 613 Fed. Appx. 432, 432 (5th Cir. 2015) (per curiam).
[59] *United States v. Yang*, 2022 WL 3098700, at *1 (5th Cir. 2022) (citing *Esogbue*, 357 F.3d at 535).
[60] *Nowden v. United States*, 2018 WL 3094941, at *2 (N.D. Tex. June 22, 2018) (cleaned up).

grounds; until now that is.  Surely recognizing the significant period of time between these events and the instant *Petition*, as well as his earlier inaction, Disiere contends there are several reasons his request for relief is nevertheless timely.

I.

Disiere first argues that discovery of "evidence of [the Prosecutors'] misconduct in this case was triggered by recent events where [Perricone and Mann] resigned in controversy and [Perricone] was disbarred for professional misconduct."[61]  Specifically, Disiere represents that, only after learning about Perricone's disbarment for improperly posting online comments concerning cases either he or the U.S. Attorney's office were prosecuting, did he feel a need to commission an investigation "to determine if the facts concerning [Perricone's] subsequent misconduct might bear on his plea."[62]  From this investigation, Disiere claims to have discovered evidence "that his counsel [Linn] worked with the government to keep [the Prosectors'] threats from the [c]ourt's attention."[63]  Thus, unaware of the purported cover up scheme, Disiere contends he "was entirely unable to advance a plea coercion argument in 2001 due to the misconduct of his own counsel."[64]

As the Government points out, however, the crux of Disiere's recent discoveries involve (1) "post-plea communications" between Disiere's counsel concerning a co-defendant's pre-trial discovery request, and (2) Linn's purported lack of candor with the Court in connection therewith.[65]  But Linn's improper concealment of the Prosecutors' alleged threats during plea negotiations—while concerning if true—is ancillary to the

---

[61] Rec. Doc. No. 594-1, p. 47.
[62] *Id.* at pp. 23, 47.
[63] Rec. Doc. No. 611, p. 34.
[64] Rec. Doc. No. 594-1, p. 47.
[65] Rec. Doc. No. 615, p. 8.

fundamental error underlying Disiere's request for *coram nobis* relief: the involuntariness of his guilty plea. "The 'critical inquiry' is whether [Disiere] 'knew or should have known' earlier of facts underlying his claims for *coram nobis* relief."[66] As previously stated, the prosecutorial misconduct now alleged to have made Disiere's plea constitutionally unsound occurred on or around July 17, 2000, beginning with the telephone conversation that conveyed the prosecutor's alleged threats. Thus, by July 21, 2000, Disiere had knowledge of all the facts (i.e., threats and promises) which he now sets forth as rendering his guilty plea involuntary. Linn's subsequent attempts to conceal those threats from judicial scrutiny in connection with charges against a co-defendant, almost two months after subject plea was entered before the Court, did nothing to obviate Disiere's knowledge of same or his ability to challenge the voluntariness of his plea sooner.[67]

Disiere's reliance on the improper concealment of the Prosecutors' threats as an independent basis for *coram nobis* relief is no more availing. It is clear that, by July 21, 2000, Disiere knew, or should have known, that both the Prosecutors and Linn were intentionally concealing, from the Court, "the essence of those promises that induced the plea agreement[,]" thereby precluding a proper review of its voluntariness.[68] To start, Disiere expressly represented to the Court at the re-arraignment that he had reviewed the plea agreement "in great detail with [his] attorney."[69] Thus, the Prosecutors' omission of

---

[66] *Pickett v. United States*, 2018 WL 9990828, at *2 (E.D.N.Y. Nov. 1, 2018) (citing *Foont v. United States*, 93 F.3d 76, 80 (2d Cir. 1996)); *see Nicks v. United States*, 955 F.2d 161, 167-68 (2d Cir. 1992) (stating same).

[67] Disiere does not dispute that he had knowledge of the prosecutor's threats and promises starting in July 2000. Instead, he contends that he "did not appreciate the legal significance of the coercion and the threats." Rec. Doc. 611, p. 34. But it is axiomatic that professed ignorance of one's legal rights does not justify a delay in bringing suit.

[68] Rec. Doc. No. 594-1, p. 29 (internal citation and quotation marks omitted).

[69] Rec. Doc. No. 374, p. 15. Nothing in Disiere's briefing now suggests that he did not, in fact, review the factual basis of the pleas.

the threats/promises that are now alleged to have induced the plea agreement should have been clear.  The same is true of the Prosecutors' and Linn's failure to bring those terms to the Court's attention during the plea colloquy.  Indeed, Disiere was present when the Court asked Linn whether he was "satisfied" that Disiere was pleading guilty voluntarily and with full knowledge of the consequences of his plea.[70]  Linn responded in the affirmative.  Importantly, at that point in the proceeding, the Court had just asked Disiere whether "anyone threatened or forced [him] to plead guilty or told [him] that if [he did] not … other adverse action would be taken against [him]."[71]  He, too, represented to the Court that nothing impinged on the voluntariness of his decision.

While it may be true that Disiere did not learn about Linn's subsequent attempts to conceal the coercive nature of the Prosecutors' negotiation tactics until 2020, it merely supplements what was already known to Disiere in July 2000: *that Linn and the Prosecutors were actively concealing the threats and promises that induced the guilty plea*.  Indeed, as the Government notes, one might reasonably argue that Disiere actively participated in concealing the Prosecutors' threats from the Court or, at the very least, knowingly accepted the benefit of their omission (i.e., the Court's acceptance of the plea agreement).  Nor is the discovery that Linn and the Prosecutors were purportedly *collaborating* to conceal the alleged threats/improper promises from the Court in September 2000 a new fact that would justify delay in seeking *coram nobis* relief.  As stated above, Disiere knew that Linn and the Prosecutors were affirmatively and contemporaneously concealing details that would undermine the voluntariness of his July 2000 plea; the discovery of tangential additional facts nineteen (19) years later is not a

---

[70] *Id.* at p. 26.
[71] *Id.* at p. 25.

valid excuse for his significant (and conscious) delay in seeking relief.[72]   Indeed, the law

is clear that Disiere's delay may not be excused just because new evidence that, but for

a lack of diligence was not previously unavailable, comes to light that adds credence to a

previously available claim.[73]

A pre-existing knowledge of pertinent facts, and subsequent inaction, is likewise

the fatal flaw in Disiere's attempt to obtain *coram nobis* relief due to what he now

describes as ineffective assistance of counsel.[74]   While it may be the case that Linn's

failure to disclose a material fact "that would have exposed the involuntary nature" of his

guilty   plea   constituted   constitutionally   deficient   performance   under   the   Sixth

---

[72] This is especially true where the evidence Disiere presents to overcome the bar of his earlier inaction does not add very much to his case or show why he could not have acted sooner.  Notably, Perricone's September 5 fax to Linn, Rothbaum's September 14 memorandum, and Linn's September 15 letter to Judge Clement, merely depict a continuation of the concealment Disiere had knowledge of following his re-arraignment.  Had Disiere more promptly sought postconviction relief challenging the voluntariness of his plea, and the concealment of the Prosecutors' threats/improper promises at the re-arraignment (especially by Linn), it is possible that this exact evidence would have been discovered sooner.  *See infra* pp. 20-21 n.105.  Whereas the underlying rationale for requiring a *coram nobis* petitioner to show sound reasons for failing to seek appropriate relief earlier is "protection against laying behind the log of an analogous limitation period as a safe haven for prejudicing the government," that concern is paramount here as both Linn and Rothbaum are deceased and unable to respond to the allegations of professional misconduct Disiere now charges.  *See Monroe v. United States*, 2005 WL 2133668, at *5 (E.D. Tex. Aug. 31, 2005) (citing *Telink v. United States*, 24 F.3d 42, 47 (9th Cir. 1994)); Rec. Doc, No. 604, p. 6 n.1 ("James Linn is deceased and cannot now clarify what exactly he meant … [n[either can he confirm or deny that Disiere authorized him to send and was fully aware of [the letter to Judge Clement].").  And while Disiere claims there was a nefarious conspiracy between Linn and the Government that was only revealed in 2020, the primary communication shown between Perricone and Linn is the fax of Brown's *Brady* and *Giglio* request, along with Perricone's accompanying message: that "he was sending a fax he received about which he knew [Linn] would not be happy."  Rec. Doc. No. 594-1, p. 18.  This is no more damning of Linn and Perricone's misconduct (or indicative of a conspiratory scheme) than the contemporaneous concealment that occurred at the July 2000 re-arraignment; indeed, the essence of Perricone's September message was derivative thereof.  Thus, while Disiere claims "no criminal defendant would assume that his own counsel was in a furtive conspiracy with the Prosecutors to hide critical facts from the court," he had knowledge of facts suggesting that was the case in July 2000.  Rec. Doc. No. 611, p. 36.  That additional facts were uncovered in 2020 does not justify what was already, at that point, a twenty (20) year delay in seeking appropriate relief or performing diligence thereupon.  *See United States v. Kwan*, 407 F.3d 1005, 1013 (9th Cir. 2005) (stating "our review of *coram nobis* cases reveals that courts have denied relief … where the petitioner has delayed for no reason whatsoever [and] where the respondent demonstrates prejudice").
[73] *See Prible v. Lumpkin*, 43 F.4th 501, 516 (5th Cir. 2022) (citing *McCleskey v. Zant*, 499 U.S. 467, 498 (1991)).
[74] *See generally Worlumarti v. United States*, 613 Fed. Appx. 69, 72 (2d Cir. 2015) (summary order) (finding untimely a second *coram nobis* petition based on ineffective assistance of counsel where petitioner knew of all relevant facts for a possible *Stickland* claim at time of first petition).

Amendment[75]—which the Court does not decide—Disiere had knowledge of this deficiency (i.e., the concealment) at his July 2000 re-arraignment.  Yet, he took no steps to seek relief thereupon until after the 2020 investigation uncovered Linn's second, derivative act of concealment in September 2000.  As stated above, the requirement for a *coram nobis* petitioner to show "sound reasons" for failing to seek appropriate relief sooner is not met where all that is presented to excuse the inaction on a previously available claim is 'new' information that could have been discovered through earlier-performed diligence.  Similarly, the facts underlying Disiere's claim that his counsel failed to provide alternatives to pleading guilty were available to him beginning on or around July 17, 2000—when Disiere claims Neville and Johnson presented the situation as a "binary choice: plead guilty or go to jail."[76]  Yet, this too went unmentioned in any attempt for postconviction relief until January 2024; it is therefore untimely.[77]

## II.

Disiere next argues that, notwithstanding any pre-existing knowledge he may have had concerning his claims at the time of conviction, "[i]t would have been reasonable for [him] to fear reprisals from the Prosecutors if he exposed their scheme as they were still

---

[75] Rec. Doc. No. 594-1, p. 39.

[76] *Id.* at p. 17.

[77] Although the Government has sufficiently argued that Disiere does not meet the "sound reason" element of *coram nobis* relief on the grounds outlined in Section I of this ruling, the same outcome would, alternatively, be warranted by the doctrine of laches.  Laches is an equitable remedy that is distinct from the "sound reason" element, but the two are overlapping.  *See Lee v. United States*, 2009 WL 3762112, at *4 n.4 (N.D. Tex. Nov. 10, 2009) (finding that "application of laches is a sufficient, but not necessary, bar to consideration of a petition for *coram nobis* relief" due to the sound reason element).  "The Court may apply laches to a *coram nobis* petition if the petitioner inexcusably delays asserting his claims and the government is prejudiced by the delay."  *Cortes-Mendoza v. United States*, 2016 WL 9663265, at *1 (S.D. Tex. Jun. 13, 2016) (internal citations omitted).  As noted above, the Government has shown that, due to Disiere's unexcused delay in pursuing his involuntariness and improper concealment claims, it has been deprived the opportunity to examine or challenge the two defense attorneys whom Disiere now claims colluded with the Prosecutors to his detriment.  The Government's ability to respond is therefore significantly prejudiced—as would be the Court's ability to properly analyze the merits of Disiere's fundamental error claims, had those arguments been reached.

in a position to nullify his plea agreement."[78]  To this point, Desiree's reliance on *United States v. Cerdes*[79] is well-placed—reason to believe that reprisals from a government actor will result if action contrary to a plea agreement is taken can be a legitimate reason for delay in seeking *coram nobis* relief.[80]  That said, the Court finds Disiere's alleged  fear of retribution to be somewhat disingenuous under the circumstances.  In the period between his July 2000 conviction and April 2003 termination of probation, Disiere twice engaged in the very reprisal-inviting activities which he now claims chilled his ability to seek appropriate relief earlier on the grounds presented.[81]  Tellingly, the first of these attempts was the April 2001 *writ of error coram nobis*[82] attacking inconsistencies in the factual basis submitted in support of the plea agreement.[83]  To attack his guilty plea in this manner (i.e., suggesting the Prosecutors would knowingly seek conviction for a crime that did not occur), but not on grounds of involuntariness and improper concealment, undermines Disiere's alleged fear of reprisal such that it cannot constitute "sound reason" for failing to seek appropriate relief sooner than the instant *Petition*.  To conclude otherwise, the Court would need to accept that in the several years following his

---

[78] Rec. Doc. No. 594-1, p. 48.

[79] 2023 WL 8725914, at *3 (5th Cir. 2023) (per curiam).

[80] *Id.* at *3.

[81] Rec Doc. No. 513 (writ of error *coram nobis*) and Rec. Doc. No. 578 (motion for early termination of probation).  This is a significant distinguishing factor from the circumstances the Fifth Circuit encountered in *United States v. Cerdes*.  There, the petitioner delayed seeking any form of habeas relief until after the "powerful and dangerous … rogue DEA agent" whose misconduct led to his conviction had been recognized as a "bad actor" by the Government and indicted on several federal charges related to official wrongdoing. *Cerdes*, 2023 WL 8725914, at *3.  Of note, the Fifth Circuit recognized that the agent had "planted evidence to fabricate a charge against [the petitioner] …, stole money and property from [petitioner] … and [] sent a team to harass [petitioner's] 79-year old mother." *Id.*  While, if true, the prosecutor's threat to unilaterally revoke Disiere's bond and publicize the employee allegation are concerning—and perhaps coercive—they certainly did not have the same chilling effect as the official misconduct described in *Cerdes*.

[82] Rec. Doc. No. 513

[83] Rec. Doc. No. 514, pp. 14-15 ("It is, quite simply, a contradiction in terms for the government to say in one breath that [Disiere] could affirmatively conceal the existence of a felony from the government and in the next breath admit that the defendant did not know of the potential existence of such a felony until the government informed him of it.") (cleaned up).

conviction, Disiere's fear of reprisals allowed him to seek postconviction relief on some grounds, but not others.  The Court declines to make such a finding.

III.

Disiere's third timeliness argument centers on what he characterizes as "new evidence" of his innocence: affidavits from two FBI agents "attesting to the lack of any basis for charging Disiere in the first place in the underlying case."[84]   He thus argues that "actual innocence of misprision itself constitutes an independent basis for recognizing he has satisfied the sound reasons for delay prong of *coram nobis*."[85]  But Disiere identifies no Fifth Circuit precedent which stands for the proposition that a claim of actual innocence can excuse delay in seeking *coram nobis* relief, let alone serve as a ground for *coram nobis* relief as a general matter.[86]  Nor does he identify any such authority for newly discovered evidence of actual innocence.  Thus, he turns to out-of-circuit caselaw to suggest a relaxed standard of timeliness should apply because "[i]n a <u>clear case</u> of actual innocence … extensive re-litigation is not required, the judicial resources to be expended are minimal, and the delay factor is insignificant."[87]   Further, he contends that actual innocence creates a "gateway" by which claims can be brought later in time, without regard to the normal procedural limits on challenging a criminal conviction.[88]

Nevertheless, Disiere does not present a clear case of actual innocence as would supply sound reason for failing to seek appropriate relief earlier.  As an initial matter, Judge Clement's July 2001 ruling on Disiere's first attempt at *coram nobis* relief—which

---

[84] Rec. Doc. No. 611, p. 36.

[85] *Id.* at p. 37.

[86] *See Elizondo v. United States*, 2026 U.S. Dist. LEXIS 46765, at *10 (W.D. Tex. Feb. 4, 2026) ("[a]ctual innocence is not a proper basis for coram nobis relief").

[87] Rec. Doc. No. 611, p. 37 (citing *United States v. Lesane*, 40 F.4th 191, 198 (4th Cir. 2022) (emphasis added).

[88] *Id.* at p. 27 (citing *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)).

16

the Court converted to a § 2255 motion—addressed, very carefully, his claim of actual innocence (of misprision) based on purported inconsistencies in the factual basis to his plea agreement.  He raises the same argument here.[89]  But Judge Clement rejected this argument, finding the "factual basis can be read both to support <u>and</u> negate the knowledge element[,]" and, in any event, concluded "[n]umerous [other] statements in the factual basis could convince a reasonable juror that [Disiere] knew that a felony had been committed when he admittedly concealed it."[90]  Disiere does not directly challenge this finding, or any other, in Judge Clement's ruling and therefore fails to meet his "considerable burden of overcoming the presumption that previous judicial proceedings were correct."[91]   Instead, he merely recites the same argument for this Court's consideration—urging that his actual innocence is sufficiently clear such that it is both a sound reason for delay and a meritorious basis for *coram nobis* relief from his conviction.

It is not.  Even so, it is well-settled that "[a] *coram nobis* petition may not be used to relitigate claims that have already been rejected in a proceeding brought under §

---

[89] Disiere argues that "the factual basis [itself] makes it abundantly clear that [his] only knowledge of any potential crime being committed by his company's counsel Edwin Edwards came from the government itself."  Rec. Doc. No. 611, p. 28.  His previous attempt at postconviction relief on this ground stated, "[i]n this case, the government's Factual Basis not only fails to provide support for a guilty plea to a charge of misprision, it affirmatively proves the [Disiere] could not have committed the offense since he was not aware of any wrong doing on the part of anyone until after the government informed him of the results of its clandestine wire taps on third parties."  Rec. Doc. No. 537, pp. 9-10 (citing Def's May 8, 2001 Reply Mem. p. 13).

[90] Rec. Doc. No. 537, pp. 11, 14.  Notably, Judge Clement pointed to several details in the factual basis to conclude that, "[a]t a minimum, [the] evidence easily could support a finding of willful blindness to a rather obvious mail fraud scheme."  *Id.* at p. 14.  Among them were statements that (1) "Disiere hired Edwin Edwards for purposes of using his influence to resolve the problem with the investigation[;]" (2) Edwards informed Disiere that he a close relationship with Sanders and he was responsible for getting the Special Master his job; (3) the method of payment from Disiere to Edwards was through a third party because "Edwards advised Disiere that if Edward[']s name surfaced in the matter, it would not be good for anyone involved."  *Id.*

[91] *United States v. Dyer*, 136 F.3d 417, 422 (5th Cir. 1998) (citing *Morgan*, 346 U.S. at 512); *United States v. Wilson*, 2020 WL 3051250, at *2 (S.D. Miss. June 8, 2020) (internal citation omitted).

2255."[92]   Disiere's contention that his actual innocence is supported by purported inconsistencies in the factual basis of his plea agreement was considered and rejected in the § 2255 proceeding he initiated in April 2001.   Because he is not entitled to another opportunity to seek postconviction relief on grounds previously raised, the Court will not entertain this argument in considering whether Disiere's actual innocence is clear such that sound reason[93] now exists for his delay in seeking relief on the other grounds presented.[94]   The Court further concludes the same is required for Disiere's contention

---

[92] *United States v. Hawks*, 2022 WL 1517040, at *1 (5th Cir. 2022) (citing *United States v. Esogbue*, 357 F.3d 532, 535 (5th Cir. 2004) (emphasis added)).

[93] The Court recognizes that Disiere raises his actual innocence argument in attempting to show both "sound reason" for not seeking appropriate relief earlier and a "fundamental error" requiring *coram nobis* relief.   In either case, Disiere would have this Court consider anew arguments that were previously raised and rejected by Judge Clement while considering postconviction relief on grounds of actual innocence.   Yet, Disiere's briefing does not suggest that Judge Clement's findings or conclusions were erroneous—instead, he merely regurgitates the same points previously raised.   Thus, the arguments are not properly before the Court, regardless of which element of *coram nobis* relief they are aimed at satisfying.

[94] Even if the Court credited the merits of Disiere's regurgitated arguments, a clear case of actual innocence (and *sound reason* for delay) would not result for other reasons.   Notably, Disiere does not address Judge Clement's finding that "numerous statements" in the factual basis, beyond his now emphasized inconsistencies, provide a sufficient basis from which a reasonable juror could find the knowledge element of misprision is met.   Rec. Doc. No. 537, p. 14.   Not to mention, Disiere "[u]nder oath … testified that he had committed all the acts charged in the superseding bill, necessarily implying satisfaction of the knowledge element[,]" and all others.   Rec. Doc. No. 537, p. 12.   Indeed, "solemn declarations in open court carry a strong presumption of verity."   *United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009) (internal citation and quotation marks omitted).   And while Disiere claims his statements at the re-arraignment should not be read to legitimize an otherwise coerced plea, the Court finds that none of the "independent indicia" of involuntariness Disiere submits is sufficient to overcome this presumption.   Rec. Doc. No. 594-1, p. 41. To start, any claim of involuntariness is soundly undermined by the fact that Disiere was represented, at all times, by a seasoned team of attorneys—none of whom raised the alarm to threats/improper promises. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).   Second, Disiere's account of the alleged coercion is riddled with inconsistency.   This includes uncertainty over what should be an elementary fact: which of his lawyers received the Prosecutors' improper threats.   The answer is unclear from either Johnson or Neville's affidavits and, therefore, Disiere's claim to have provided "two eyewitness[]" accounts is unpersuasive.   Rec. Doc. No. 594-1, p. 43.   The exact substance of the Prosecutors' improper threats, too, is unclear.   Disiere represents that the Prosecutors threatened they "would have him immediately thrown in jail" and "make the [employee] allegation public."   Rec. Doc. No. 594-1, pp. 16-17 (emphasis added).   The Rothbaum memorandum, however, presents a more benign account of the purported "threats," recounting: "[t]he prosecution took the position [the employee allegation] would be the vehicle by which David's release bond could be revoked … and [prompt] attendant publicity."   *Id* at p. 19 (emphasis added).   That the Government might have omitted that any bond revocation would require court approval—even if intended to mislead Disiere (which the Court cannot determine on the present record)—does not obviate the significance of having a team of lawyers who could have advised Disiere of this procedural fact.   To decide that they did not would be to speculate on the substance of communications between Disiere and any one of his four identified counsel—two of whom (the two most intimately familiar with the Prosecutors' improper threats) are now deceased.   Not to mention, Judge Clement was satisfied—as is this Court—that Disiere

that the factual basis supporting his plea "failed to establish any facts supporting the required element of taking [an] affirmative act in furtherance of failing to disclose a crime."[95]  Disiere expressly raised this same argument in 2001, stating: "[h]ere … there is no factual showing of the element of concealment … indeed an affirmative step to conceal – is a required element of violation of 18 U.S.C. § 4."[96]  Judge Clement rejected the argument,[97] in part because Disiere acknowledged in the factual basis that he "concealed the [fraudulent awarding of the contingency fee agreement] by continuing to make payments through the mail."[98]  And while Disiere presents no reason to conclude Judge Clement's conclusion was erroneous, a *coram nobis* petition is generally not appropriate, or hospitable, to such efforts.[99]

Thus, all that is left to support Disiere's renewed claim of actual innocence—for purposes of this Court's *sound reasons* analysis—are the affidavits of the two FBI agents, Harry Burton ("Burton") and Geoffrey Santini ("Santini").  The Government contends, however, that "claims of newly discovered evidence relevant only to the guilt or innocence of the petitioner have been held not cognizable in a *coram nobis* proceeding."[100]  That may be the case—though the Fifth Circuit has never explicitly stated newly discovered

---

not only agreed to the factual basis of his guilt but had an "active role" in its drafting and presentation, acts from which he "sought and obtained a demonstrable degree of protection [from prosecution]."  Rec. Doc. 537, p. 14 n. 25; *see Thrasher v. United States*, 721 F. Supp. 2d 480, 487-88 (E.D. Va. 2010) (noting that "where a plea agreement is favorable to a defendant and it was reasonable and prudent to accept the plea, that is itself evidence of the voluntary and intelligent nature of the plea") (internal citation omitted).

[95] Rec. Doc. No. 611, p. 29.

[96] Rec. Doc. No. 525, p. 18 (cleaned up).

[97] Rec. Doc. No. 537, p. 10 (finding "a reasonable juror could find that … [Disiere] took an affirmative step to conceal the crime.").

[98] Rec. Doc. No. 537, p. 10.

[99] *See United States v. Becerra*, 110 Fed. Appx. 465, 466 (5th Cir. 2004) (citing *Esogbue*, 357 F.3d at 535) ("Becerra cannot avail herself of the remedy of coram nobis because … her 'regurgitation' of claims substantially similar to those raised in her 28 U.S.C. § 2255 motion is insufficient to meet the exacting standard for relief.").

[100] Rec. Doc. No. 604, p. 13 (emphasis added).

evidence cannot be grounds for *coram nobis* relief, it has never decided that it can; notably, "the Eleventh Circuit has read [the Fifth Circuit's] precedents to bar consideration of newly discovered evidence in a *coram nobis* proceeding."[101]  The Court, however, need not pursue the issue further because the agents' affidavits are not properly characterized as "newly discovered" evidence.

Indeed, new evidence is that which could not have been discovered sooner through the exercise of diligence.[102]  Accordingly, Disiere contends that, at the time of his first attempt for postconviction relief,[103] the agents' affidavits "could not have been available as [Burton and Santini] were still active government agents."[104]  This is partially correct.  The agents departed from their service with the Federal Bureau of Investigation ("FBI") in December 2001 and September 2000, respectively—thus, obtaining the Santini affidavit would not have been precluded by virtue of his employment at the time Disiere's first *writ of error coram nobis* was filed.  In any event, Disiere presents no reason why either of the agents' affidavits was unobtainable or otherwise undiscoverable between December 2001, when Burton retired, and October 2020, when the first of the affidavits was executed.[105]  The fact that the information provided by the agents only came to

---

[101] *United States v. Thomas*, 1995 WL 103267 at *1 (5th Cir. 1995) (per curiam) (citing *Moody v. United States*, 874 F.2d 1575, 1577 (11th Cir. 1989)).  Additionally, the *Thomas* court noted that the Fifth Circuit has previously affirmed, without opinion, a district court ruling that "newly discovered evidence affords no entree to [*coram nobis*]."  *Id* (citing *United States v. Carter*, 319 F. Supp. 702, 705 (M.D. Ga. 1969), *aff'd*, 437 F.2d 444 (5th Cir. 1971)).

[102] *Adger v. TA Operating, L.L.C.*, 2025 WL 1276406, at *7 (5th Cir. 2025) ("Here, however, the supposedly 'new' evidence was not 'actually newly discovered' and 'could have been discovered earlier by proper diligence.").

[103] Disiere's first *writ of error coram nobis* was filed on April 9, 2001.  Rec. Doc. No. 594-1; Rec. Doc. No. 513.

[104] Rec. Doc. 594-1, p. 48.

[105] Rec. Doc. No. 594-7, p. 3.  This is in stark contrast to the circumstances before the Ninth Circuit in *Hirabayashi v. United States*, 828 F.2d 591, 605 (9th Cir. 1987), which Disiere includes to show rejection of the "argument that a *coram nobis* petition filed almost forty years after conviction should be dismissed where a claim was based upon evidence that could have been, but was not, discovered years earlier."  Rec. Doc. No. 594-1, p. 44.  This is somewhat misleading.  The petition in that case, brought by a U.S. citizen of

Disiere's attention due to a renewed interest in challenging his conviction—no matter the

reason therefor—does not make it new evidence.  Indeed, the *Thomas* court recognized

that, even if *coram nobis* relief could be granted upon newly discovered evidence, it would

still need to be shown that the "evidence could not, in due diligence, have been revealed

[earlier]."[106]  Disiere has failed to make that showing regarding the agents' affidavits.[107]

---

Japanese descent challenging his conviction for failing to abide by a World War II era curfew applicable to "all persons of Japanese ancestry," was prompted by an archival researcher discovering the "sole remaining copy of the original report prepared by the general who issued the curfew" explaining the basis therefor. *Hirabayashi*, 828 F.2d at 592-93.  Likely recognizing its damning indicia of racial prejudice, the War Department subsequently "revised the report in several material respects and tried to destroy all of the original copies before issuing the final [publicly available] report."  *Id* at p. 593.  "The original version … declared that because of traits peculiar to citizens of Japanese ancestry it would be impossible to separate the loyal from the disloyal," while the officially released version did not."  *Id* at p. 598.  The Ninth Circuit agreed with the district court's conclusion that the "petitioner cannot be faulted for not finding and relying upon [the suppressed report] long before he brought this action … [because] "[p]rofessional historians had failed to discover it as well, and the difficulty for a lay person to locate the initial version was documented in the record by testimony concerning its discovery."  *Id* at p. 605 (internal citation omitted).  Here, however, Disiere does not show that an earlier-conducted diligent investigation could not have uncovered either the Rothbaum memorandum, Linn's September 2020 communications with Perricone, or the agents' affidavits. Indeed, as for the latter two, Disiere represents that their discovery was the result of a "basic investigation into the facts" and "a more thorough inquiry" of documents which, although undiscovered until 2020, are not shown to have been previously unavailable.  Thus, it appears to the Court that the only thing that stood in the way of discovering this information sooner was Disiere's lack of interest in challenging his conviction for almost two decades.  Thus, its subsequent discovery simply cannot constitute *sound reason* for delay in seeking earlier postconviction relief upon the revelations now unearthed.

[106] *Thomas*, 1995 WL 103267, at *1.

[107] Even if the information within the affidavits could be considered "newly discovered" evidence, it nevertheless falls short—whether taken alone or in connection with Disiere's alleged deficiencies in the factual basis—of showing a clear case of actual innocence as would constitute *sound reason* for Disiere's delay in seeking appropriate relief sooner.  The crux of Burton's affidavit, for instance, is that, upon review of "every conversation that was intercepted between Edwards and the others … there was no direct evidence of Disiere's participation in or knowledge of any criminal activity."  Rec. Doc. No. 594-6, p. 2.  He concludes, "I do not believe we could have established that Disiere had committed a crime."  *Id.*  Similarly, Santini's affidavit states his belief that "the case [against Disiere] was a waste of time because … there was no evidence that [he] committed a crime."  Rec. Doc. No. 594-7, p. 2.  He explains that the "Disiere matter was very confusing and highly technical" and that the FBI "did not have one intercepted clear-cut criminal conversation between" Disiere and any individuals with, what Burton classifies, "prosecutable cases."  *Id.* The Court agrees with the Government's contention that the affidavits largely "reflect the affiant-agents' opinions … [and] do not undercut Disiere's sworn statements admitting his illegal conduct as part of his guilty plea."  Rec. Doc. No. 615, p. 2.  All the Court gleans from the agents' affidavits, by way of fact, is that the FBI had not been able to uncover, through wiretap surveillance or a review of unspecified documents, any evidence of Disiere's involvement in, or knowledge of, the alleged criminal conspiracy.  While this may, of course, relate to Disiere's case for actual innocence, it does not establish same.  Considering the factual basis underlying Disiere's guilty plea, nothing in the agents' affidavits undermine Judge Clement's finding that Disiere admitted to acts which could support a finding of willful blindness to the conspiracy.  *See infra* p. 17 n.90 (citing Rec. Doc. No. 537, p. 14).  That being the case, it logically follows that very little, if any, evidence of Disiere's knowledge was capable of capture by wiretap surveillance.  The mere fact that some investigative techniques were unsuccessful in uncovering evidence of wrongdoing does not require the

For these reasons, Disiere's reliance on actual innocence as a sound reason for failing to seek appropriate relief earlier does not carry the day.

IV.

Finally, Disiere argues that sound reason for his delay in seeking relief exists because his "efforts to diligently explore new evidence of Government misconduct [have] been delayed and impaired by further Government misconduct[,]" namely, the failure to provide meaningful responses to Freedom of Information Act ("FOIA") requests submitted in March 2021.[108]  The Government does not comment on the "merit" of "Disiere's 2021 complaints," but argues they "in no way absolve[] him of his twenty-plus year failure to seek relief for allegedly coercive actions known to him at the of his guilty plea."[109]  The Court agrees and finds Disiere's FOIA requests merely seek information in addition to that which could have sustained a colorable argument for postconviction relief, based on involuntariness and concealment, in April 2001 or any time thereafter.

V.

In sum, Disiere's arguments sounding involuntariness, improper concealment, and ineffective assistance of counsel, and the facts on which they are predicated, were available to him long before he chose to present them in an attempt for postconviction relief.  While certain facts—namely those concerning the Rothbaum memorandum and Linn's actions in September 2000—might further support these claims, that this information did not come to Disiere's attention until 2020 was certainly not due to its prior

---

Court to negate Disiere's sworn in-court statements or those now-unchallenged portions of the factual basis to the contrary, namely that he continued payment of settlement proceeds by mail with knowledge sufficient to demonstrate a willful blindness of the alleged conspiracy underlying the settlement's inception.
[108] Rec. Doc. No. 594-1, p. 49 (cleaned up).
[109] Rec. Doc. No. 604, p. 13.

unavailability; rather, a years-long failure to perform diligence is to blame.  The same is true for the Burton and Santini affidavits, both of which are now presented alongside claims of actual innocence already considered and rejected by Judge Clement. Importantly, and notwithstanding the jolt to action likely prompted by learning of Perricone's disbarment, there is no indication that Disiere was unable to evaluate the need for *coram nobis* relief on these grounds sooner.  According, Disiere's failure to present sound and justifiable reason for his nearly twenty (20) year delay in seeking *coram nobis* relief, or any other form of postconviction remedy, is fatal to the instant *Petition*.  Having so concluded, the Court need not address the question of fundamental error.

## V.    CONCLUSION

For the foregoing reasons, Disiere's *Petition for Writ of Error Coram Nobis*[110] is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on this  10th  day of August, 2026.

_____

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[110] Rec. Doc. No. 594.